IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Dean Haley, | ) No. CV 02-1087-PHX-DGC(CRP) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Terry L. Stewart, et al., | ) |
| Respondents. | ) |

Pending before the Court is a pro se petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner Kenneth Dean Haley. (Docket #1). Petitioner is being held at the Arizona Department of Corrections based on convictions in Pinal County Superior Court for first degree murder and aggravated assault. Petitioner alleges four grounds for relief:

1. Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when the State introduced undisclosed rebuttal evidence from Petitioner's sister, Cheryl Martin;

2. The State's use of Arizona's Victims' Bill of Rights impeded disclosure of evidence and witnesses, and prevented him from having a pretrial conference with Cheryl Martin in violation of his Fifth and Fourteenth Amendment Rights;

1    3.    The trial court's instruction on premeditation violated his right to due process
2          of law under the Fifth and Fourteenth Amendments by failing to distinguish
3          between first and second degree murder;

4    4.    Petitioner received ineffective assistance of counsel in violation of his Sixth
5          and Fourteenth Amendment rights.

6    Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate
7    Judge Charles R. Pyle for a report and recommendation.  The Magistrate Judge recommends
8    the District Judge, after independent review of the record, enter an order dismissing the
9    Petition.

10   FACTUAL AND PROCEDURAL BACKGROUND

11   Petitioner stood trial for the murder of his father and attempted murder of his mother.
12   The trial[1] began on May 6, 1997, and culminated in guilty verdicts as to first degree murder
13   of his father and aggravated assault of his mother on May 19, 1997.  Petitioner filed a timely
14   appeal with the Arizona Court of Appeals in which his conviction was upheld. *State v. Haley*,
15   194 Ariz. 123, 978 P.2d 100 (1999)[2].  Petitioner then filed a timely notice of post conviction
16   relief.  An evidentiary hearing was held on October 11, 2000, regarding Petitioner's petition
17   for post conviction relief. (Reply, Exhibit D; Notice, Exhibit M)  The trial court issued a
18   minute entry denying post-conviction relief. (Answer, Exhibit M)  The Arizona Court of
19   Appeals affirmed the trial court's denial of post conviction relief by memorandum decision
20   on October 23, 2001. (Petition, Exhibit 2)  Petitioner next filed this timely petition for writ
21   of habeas corpus.

22   The charges at trial arose from an incident on October 21, 1994. (Notice, Exhibit C,
23   pg. 168).  On that day, Petitioner went to the home of his parents where an argument began

24   _____

25   [1]Complete record of the trial contained in Notice, Exhibits A-K (Docket # 30-35)
26   hereinafter "Notice."

27   [2]The Court's holding that a jury instruction on premeditation did not require proof of
     actual reflection was overruled by the Supreme Court of Arizona in *State v. Thompson*, 204
28   Ariz. 471, 65 P.3d 420 (2003).

1   between Petitioner and his father.  Petitioner's mother was at the house where she was

2   recovering from an incident in May 1994 where her other son, Wesley Haley, had gouged

3   her eyes out. (Answer, Exhibit B, pg. 19-20).  During the dispute between Petitioner and his

4   father, Petitioner took a knife from a nightstand in the bedroom and stabbed his father. (*Id.*,

5   Exhibit A).  Petitioner grabbed his mother when she attempted to get out of bed and stabbed

6   her in the neck. (Notice, Exhibit D, pg. 36, 40).

7           At some point during the incident, a telemarketer phoned the home. (*Id.*, Exhibit G,

8   pg. 82).  The telemarketer testified that he overheard someone in the background asking for

9   help. (*Id.*).  When the phone disconnected, the telemarketer called the house again and

10  attempted to keep Petitioner on the phone, successfully doing so until the arrival of the

11  police. (*Id.* at 83-84, 91).  During this time, the telemarketer had the company owner's wife

12  call the police while he remained on the line with Petitioner. (*Id.* at 84).  The telemarketer

13  testified that Petitioner told him that he had killed his father and was going to kill his mother.

14  (*Id.* at 87).

15          When Pinal County Sheriffs arrived, they found Marvin Haley, Petitioner's father,

16  dead, lying face down in a pool of blood with multiple stab wounds. (Notice, Exhibit C, pg.

17  175; Exhibit F, pg. 22-23).  Marvin Haley's eyes had been gouged out. (*Id.* at Exhibit C, pg.

18  195; Exhibit F, pg. 33).  Sheriffs also discovered after the paramedics had left that Mrs.

19  Haley had been stabbed in the neck, and the paramedics were called back. (*Id.* at Exhibit E,

20  pg. 196-197, 203).  Petitioner admitted to Sheriff's officers that he had in fact gone to the

21  nightstand, removed a knife and stabbed his father with it. (Answer, Exhibit A).

22          The day of the incident, a Sheriff's detective obtained an order to draw the blood of

23  Petitioner. (Reply, Exhibit A).  A Sheriff's detective also later obtained a search warrant to

24  test the blood obtained for any medications or narcotics. (*Id.*, Exhibit B).  Subsequent tests

25  on the blood sample showed the existence of methamphetamine. (Notice, Exhibit G, pg. 63-

26  64).

27  . . . . . . . . .

28

1    At trial, Petitioner presented an insanity defense.  In support of his defense, Dr. Esplin

2    testified.[3]  Dr. Esplin testified that it was his opinion that Petitioner suffered from a serious

3    thought disorder, independent of any methamphetamine use. (Notice, Exhibit H, pg. 40, 54).

4    Dr. LaWall testified as the expert for the state.[4]  Dr. LaWall's initial report had listed

5    schizophrenia as the number one possibility for Petitioner's actions with the number two

6    possibility being drugs. (Notice, Exhibit I, pg. 160).  During trial Dr. LaWall was made

7    aware of the levels of methamphetamine in Petitioner's system and he changed his opinion

8    to "mental condition at the time of the alleged offense was due to methamphetamine abuse

9    as opposed to some preexisting underlying mental illness..." (*Id.* at 146).

10    At trial, Petitioner's sister, Cheryl Martin, testified.[5]  Martin testified about a

11    conversation that she had with Petitioner before the October 21, 1994, incident. (*Id.* at 36-

12    38).  Martin testified that Petitioner recounted a conversation between him and his brother

13    Wesley after Wesley had attacked their mother, as follows: "And Wesley looked at Kenny

14    and told Kenny that: Well, I did mom.  Now you have to do dad.  Because Wesley had

15    thought he had killed mom." (*Id.* at 38).  Trial counsel for Petitioner moved for a mistrial

16    after Martin's testimony, arguing that the state knew about this testimony a year prior to trial,

17    had a duty to disclose this information and failed to do so. (*Id.* at 74-77).  That motion was

18    denied by the trial court. (*Id.* at 87).

19    The jury convicted Petitioner of first degree murder and aggravated assault.  Petitioner

20    was sentenced on July 2, 1997. (Notice, Exhibit L).  The trial judge sentenced petitioner to

21    a term of natural life for the first degree murder conviction and a term of 15 years on the

22    aggravated assault conviction to run consecutively. (*Id.* at 51-52).

23    . . . . . . . . .

24    . . . . . . . .

25    ─────────────────

26    [3]Dr. Esplin's testimony is contained in Notice, Exhibit H, pg. 4-108.

27    [4]Dr. LaWall's testimony is contained in Notice, Exhibit I, pg. 118-231.

28    [5]Cheryl Martin's testimony is contained in Notice, Exhibit I, pg. 24-67.

1   <u>STANDARD OF REVIEW</u>

2   <u>*Exhaustion and Procedural Default*</u>

3        A federal court may not grant a petition for writ of habeas corpus unless the petitioner

4   has exhausted the state court remedies available to him.  28 U.S.C. § 2254(b); *Baldwin v.*

5   *Reese*, 541 U.S. 27 (2004); *Castille v. Peoples*, 489 U.S. 346 (1989).  The exhaustion inquiry

6   focuses on the availability of state court remedies at the time the petition for writ of habeas

7   corpus is filed in federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  Exhaustion

8   generally requires that a prisoner give the state courts an opportunity to act on his claims

9   before he presents those claims to a federal court. *Id.*  A petitioner has not exhausted a claim

10  for relief so long as the petitioner has a right under state law to raise the claim by available

11  procedure. *See* 28 U.S.C. § 2254(c).

12       A habeas petitioner may exhaust his claims in one of two ways.  First, a claim is

13  exhausted when no remedy remains available to the petitioner in state court. *See* 28 U.S.C.

14  § 2254(b)(1)(A).  Second, a claim is exhausted if there is an absence of available state

15  corrective process, or circumstances exist that render such process ineffective to protect the

16  rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1)(B).

17       To meet the exhaustion requirement, the petitioner must have "fairly present[ed] his

18  claim in each appropriate state court...thereby alerting that court to the federal nature of the

19  claim." *Baldwin*, 541 U.S. at 30; *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

20  A petitioner fairly presents a claim to the state court by describing the factual or legal basis

21  for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting

22  claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66; *Tamalini v.*

23  *Stewart*, 249 F.3d 895, 898 (9th Cir.2001).  Mere similarity between a claim raised in state

24  court and a claim in a federal habeas petition is insufficient. *Duncan*, 513 U.S. at 365-66.

25       Furthermore, to fairly present a claim, the petitioner "must give the state court one full

26  opportunity to resolve any constitutional issues by invoking one complete round of the State's

27  established appellate review process." *O'Sullivan*, 526 U.S. at 845.  Once a federal claim has

28  been fairly presented to the state courts, the exhaustion requirement is satisfied. *See Picard*

1   *v. Connor*, 404 U.S. 270, 275 (1971).  In habeas petitions, other than those concerning life

2   sentences or capital cases, the claims of Arizona state prisoners are exhausted if they have

3   been fairly presented to the Arizona Court of Appeals, either on appeal of conviction or

4   through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of Criminal

5   Procedure.  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999).

6       In some instances a claim can be technically exhausted even though the state court did

7   not address the merits.  This situation is referred to as "procedural bar" or "procedural

8   default."  A claim is procedurally defaulted if the state court declined to address the issue on

9   the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir.2002).

10  Procedural default also occurs if the claim was not presented to the state court and it is clear

11  the state could now refuse to address the merits of the claim for procedural reasons. *Id.*  The

12  procedural bar provides an independent and adequate state-law ground for the conviction and

13  sentence and, thus, prevents federal habeas corpus review unless the petitioner can

14  demonstrate cause and prejudice for failing to raise the claim in the state proceedings. *Gray*

15  *v. Netherland*, 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier*, 477 U.S. 478, 485-

16  495 (1986); *Franklin*, 290 F.3d at 1231.  Accordingly, the procedural default doctrine

17  prevents state prisoners from obtaining federal review by allowing the time to run on

18  available state remedies and then rushing to federal court seeking review. *Coleman v.*

19  *Thompson*, 501 U.S. 722, 731-732 (1991).

20      If the claim has never been presented to the state court, a federal habeas court may

21  determine whether state remedies remain available. *See Harris v. Reed*, 489 U.S. 255, 269-

22  270 (1989); *Franklin*, 290 F.3d at 1231.  In Arizona, such a determination often involves

23  consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-

24  conviction relief proceedings.  For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner

25  may seek relief in post-conviction proceedings based on federal constitutional challenges to

26  convictions or sentences.  Under Rule 32.2, relief is barred on any claim which could have

27

28

1  been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain

2  claims[6] which were justifiably omitted from a prior petition. Ariz.R.Crim.P.32.2.

3        In summary, failure to exhaust and procedural default are different concepts. *Franklin*,

4  290 F.3d at 1230.  Under both doctrines, the federal court may be required to refuse to hear

5  a habeas claim. *Id.*  The difference between the two is that when a petitioner fails to exhaust,

6  he may still be able to return to state court to present his claims there. *Id.*  In contrast,

7  "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and

8  prejudice for the default, however, the district court dismisses the petition because the

9  petitioner has no further recourse in state court." *Id.* at 1231.

10  *Review of Merits*

11        Pursuant to the provisions of the AEDPA, the Court may grant a writ of habeas corpus

12  only if the state court proceeding:

13      (1)    resulted in a decision that was contrary to, or involved an unreasonable

14            application of, clearly established Federal law, as determined by the Supreme

15            Court of the United States; or

16      (2)    resulted in a decision that was based on an unreasonable determination of the

17            facts in light of the evidence presented in the State court proceeding.

18  28 U.S.C. § 2254(d).  Section 2254(d)(1) applies to challenges to purely legal questions

19  resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved

20  by the state court.  *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir.2004), *cert. denied* __

21  U.S. __, 126 S.Ct. 484 (2005).  Therefore, the question whether a state court erred in

22  _____

23        [6]Such claims include: (1) that the petitioner is being held in custody after his sentence
has expired; (2) certain circumstances where newly discovered material facts probably exist

24  and such facts probably would have changed the verdict or sentence; (3) the petitioner's
failure to file a timely notice of post-conviction relief was without fault on his part; (4) there

25  has been a significant change in the law that would probably overturn petitioner's conviction
if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence

26  that the facts underlying the claim would be sufficient to establish that no reasonable fact-
finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P.32.2(b)

27  (citing Ariz.R.Crim.P.32.1(d)-(h)).

28

1  applying the law is a different question from whether it erred in determining the facts. *Rice*

2  *v. Collins*, __ U.S. __, 126 S.Ct. 969 (2006).

3      Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the

4  "unreasonable application" test. *See Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir.2003).

5  Under the first test, the state court's "decision is contrary to clearly established federal law

6  if it fails to apply the correct controlling authority, or if it applies the controlling authority

7  to a case involving facts materially indistinguishable from those in a controlling case, but

8  nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.2003)

9  (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)).   Additionally, a state court's

10  decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that

11  contradicts the governing law set forth in' Supreme Court cases."[7] *Lynn v. Farmon*, 347 F.3d

12  735, 738 (9th Cir.2003) *cert. denied* 541 U.S. 1037 (2004) (quoting *Early v. Packer*, 537 U.S.

13  3, 8 (2002)).  "Whether a state court's interpretation of federal law is *contrary* to Supreme

14  Court authority...is a question of federal law as to which [the federal courts]...owe no

15  deference to the state courts." *Cordova*, 346 F.3d at 929 (emphasis in original)

16  (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed

17  under the "unreasonable application" test).

18      Under the second test, "'[a] state court's decision involves an unreasonable application

19  of federal law if the state court identifies the correct governing legal principle...but

20  unreasonably applies that principle to the facts of the prisoner's case.'" *Lynn*, 347 F.3d at 738

21  (quoting *Clark*, 331 F.3d at 1067).  Under the "'unreasonable application clause...a federal

22  habeas court may not issue the writ simply because that court concludes in its independent

23

---

24      [7]"[T]he *only* definitive source of clearly established federal law under AEDPA is the

25  holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

26  decision. *Williams*, 529 U.S. at 412...While circuit law may be "persuasive authority" for

27  purposes of determining whether a state court decision is an unreasonable application of

    Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir.1999), only the

28  Supreme Court's holdings are binding on the state courts and only those holdings need be

    reasonably applied." *Clark*, 331 F.3d at 1069 (emphasis in original).

1   judgment that the relevant state-court decision applied clearly established federal law

2   erroneously or incorrectly...[r]ather that application must be objectively unreasonable.'"

3   *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)).  When evaluating

4   whether the state decision amounts to an unreasonable application of federal law, "[f]ederal

5   courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346

6   F.3d at 929.

7          Under section 2254(d)(2), which involves purely factual questions resolved by the

8   state court, "the question on review is whether an appellate panel, applying the normal

9   standards of review, could reasonably conclude that the finding is supported by the record."

10  *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th cir.), *cert.*

11  *denied* 534 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-

12  finding process unless, after review of the state-court record, it determines that the state court

13  was not merely wrong, but actually unreasonable.").  Section (d)(2) "applies most readily to

14  situations where petitioner challenges the state court's findings based entirely on the state

15  record.  Such a challenge may be based on the claim that the finding is unsupported by

16  sufficient evidence,...that the process employed by the state court is defective,...or that no

17  finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).  In

18  examining the record under section 2254(d)(2), the federal court "must be particularly

19  deferential to our state court colleagues.'...[M]ere doubt as to the adequacy of the state court's

20  findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the

21  defect [in the state court's fact-finding process] is pointed out would be unreasonable in

22  holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972

23  (*quoting Taylor*, 266 F.3d at 1000) (emphasis in original).  Once the federal court is satisfied

24  that the state court's fact-finding process was reasonable, or where the petitioner does not

25  challenge such findings, "the state court's findings are dressed in a presumption of

26  . . . . . . . . .

27  . . . . . . . .

28

1  correctness [pursuant to 28 U.S.C. section 2254(e)[8]], which then helps steel them against any

2  challenge based on extrinsic evidence, i.e., evidence presented for the first time in federal

3  court." *Taylor*, 366 F.3d at 1000.

4          Section 2254(d)(1) and section 2254(d)(2) may both apply where the petitioner raises

5  issues of mixed questions of law and fact.  Such questions "receive similarly mixed review;

6  the state court's ultimate conclusion is reviewed under 2254(d)(1), but its underlying factual

7  findings supporting that conclusion are clothed with all of the deferential protection

8  ordinarily afforded under 2254(d)(2) and (e)(1)." *Lambert*, 393 F.3d at 978.

9  <u>DISCUSSION</u>

10  *Timeliness*

11          A one year period of limitation shall apply to an application for writ of habeas corpus

12  by a person in custody pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1).

13  Respondents concede that Petitioner's petition for writ of habeas corpus was filed within the

14  one year statute of limitations.[9] (Answer, pg. 4).

15  *Exhaustion*

16          Respondents concede that Petitioner properly exhausted Grounds One, Two, and Four.

17  (Answer, pg. 5).  Respondents however, contend that Ground Three was not properly

18  exhausted because in his direct appeal, Petitioner raised the claim solely based on state law

19  and as such did not fairly present his federal claim to the state court. (*Id.*).

20  . . . . . . . . .

21

22  _____

23          [8]Under section 2254(e) "a determination of a factual issue made by a State court shall
   be presumed to be correct."  "State-court fact-finding may be overturned based on new
24  evidence presented for the first time in federal court only if such new evidence amounts to
   clear and convincing proof that the stat-court finding is in error...Significantly, the
25  presumption of correctness and the clear-and-convincing standard of proof only come into
   play once" it is found that the state court did not unreasonably determine the facts in light of
26  the evidence presented in the state proceeding. *Taylor*, 966 F.3d at 1000.

27          [9]Calculation of time under AEDPA excludes the time during which properly filed state
28  post-conviction applications are pending. 28 U.S.C. 2244(d)(2).

1   *Ground One: Undisclosed Rebuttal Evidence from Cheryl Martin*

2          Petitioner asserts that his Fifth, Sixth and Fourteenth Amendment rights were violated

3   when the State introduced undisclosed rebuttal evidence from Petitioner's sister, Cheryl

4   Martin.  Martin testified at trial that Petitioner told her that after Wesley had gouged their

5   mother's eyes out, Wesley told Petitioner "Well, I did mom.  Now you have to do

6   Dad."(Notice, Exhibit I, pg.38).  Martin also testified that Wesley believed that he had killed

7   his mother when he told Petitioner this. (*Id.*).  On cross-examination, Martin testified that she

8   had provided this statement to the prosecution a year before the trial. (*Id.* at 46-48).

9   Petitioner's trial counsel sought a mistrial on the basis that Martin's statement had not been

10  disclosed. (*Id.* 74-77).  The motion was denied. (*Id.* at 87).

11         Respondents argue that the state was not obligated by Arizona law to disclose oral

12  statements made by Martin.  Respondents also indicate that on both April 29, 1997 and May

13  2, 1997, Cheryl Martin was listed as a potential witness in either their case-in-chief or

14  rebuttal. (Answer, pg. 9).  Respondents argue that there is no existing federal rule of law

15  allowing a defendant in a criminal case to obtain the statements of government witnesses

16  prior to their testimony.[10]  Respondents contend that Petitioner is thus proposing a new rule

17  of constitutional procedure which is barred by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060

18  (1989).

19         Arizona Rules of Criminal Procedure require that the state disclose the names and

20  addresses of witnesses as well as their relevant written or recorded statements.

21  Ariz.R.Crim.P. 15.1[11].  Here the rule clearly requires the disclosure of *written or recorded*

22  statements.  There is no indication that the statement made by Martin was written or

23  recorded.  In fact, Martin testified that she told prosecutor Rourke of Petitioner's recounting

24  _____

25  [10]In support of this position Respondents cite *Degen v. United States*, 517 U.S. 820,
    825, 116 S.Ct. 1777 (1996).

26

27  [11]In 1997, the time of trial, Rule 15.1(a)(1) would have been the applicable rule
    governing disclosure of witnesses and witness statements.  That rule has since been

28  redesignated as Rule 15.1(b)(1).

of the conversation between Wesley and himself as Rourke was walking to his car after a meeting at her house. (Notice, Exhibit I, pg. 82). The Arizona Rules also require that the state disclose all statements of the defendant. *Id.*[12]   According to Rule 15.4(a)[13], in all discovery statement shall mean

> "(i) A writing signed or otherwise adopted or approved by a person; (ii) A mechanical, electrical or other recording of a person's oral communications or a transcript thereof; and (iii) A writing containing a verbatim record or a summary of a person's oral communications."

Airz.R.Crim.P.; *See State v. Pavao*, 23 Ariz.App. 65, 530 P.2d 911 (1975).

In the present case, there is nothing to indicate that the statement made by Petitioner to Martin was in any way recorded or memorialized. As such, Petitioner was not entitled to disclosure of it prior to trial. As noted by the state appellate court, Rule 15.1 also would require the state to disclose a list of prior bad acts that it intended to use and any information tending to mitigate or negate the defendant's guilt.[14] The appellate court held that

> "The record shows that before trial the state disclosed its intent to call Haley's sister...we find nothing to suggest, nor does Haley claim, that any of the sister's conversations with or regarding her brothers had been written down or otherwise recorded. Furthermore, we do not find Wesley's statement to Haley nor Haley's reiteration of Wesley's statement to his sister to be a 'prior act' on the part of Haley within the meaning of [the] Rule...we do not find, and Haley does not suggest, how Wesley's statement could be used to mitigate or negate his guilt..." *Haley*, 978 P.2d at 102.

The state appellate court having found that Arizona law does not require disclosure of this non-recorded statement, the question becomes whether there is a Federal right to such disclosure.

The Due Process Clause of the Fourteenth Amendment affords defendants a right to disclosure of exculpatory material or information and relevant impeachment evidence. *Brady*

---

[12]In 1997 the applicable Rule was 15.1(a)(2). Today this same rule is set out at Rule 15.1(b)(2).

[13]The current rule is the same as the rule in 1997.

[14]The rules in 1997 with regard to prior bad acts would have been 15.1(a)(6) and with regard to mitigating information 15.1(a)(7). The current rules are 15.1(b)(7) and 15.1(a)(8) respectively.

1    *v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct.

2    1936 (1999) (the duty to disclose under *Brady* includes impeachment evidence).  The

3    Supreme Court has held that a criminal defendant is entitled to limited discovery and has no

4    right to obtain the statements of government witnesses prior to their testimony. *Degen v.*

5    *United States*, 517 U.S. 820, 825, 116 S.Ct. 1777, 1781-2 (1996) *citing* Fed.R.Crim.P.

6    16(a)(2).  Since the statement made by Martin was not exculpatory in nature, nor was it

7    impeachment evidence, Petitioner did not have a federal right to its disclosure prior to trial.

8    Thus, the state appellate court's ruling is not contrary to or an objectively unreasonable

9    application of federal law.

10        Petitioner seems to suggest that the Court should adopt a new rule that would grant

11    criminal defendants discovery of the testimony of an adverse witness prior to trial.  A new

12    rule is announced "when it breaks new ground or imposes a new obligation on the States of

13    Federal Government." *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070

14    (1989)(plurality opinion).  In *Teague*, the Supreme Court held that a new rule requested on

15    collateral review, as in this case, will not be applied retroactively unless it falls within an

16    exception to the general rule. *Id.* at 311.  The first exception in which a rule should be

17    applied retroactively is where it places "certain kinds of primary, private individual conduct

18    beyond the power of the criminal law-making authority." *Id. quoting Mackey v. United*

19    *States,* 401 U.S. 667, 91 S.Ct. 1160(1971).  This exception does not apply in Petitioner's case

20    as the rule he proposes does not propose to decriminalize a class of conduct nor apply to a

21    particular class of people. *See Saffle v. Parks*, 494 U.S. 484, 494-495, 110 S.Ct. 1257, 1263-

22    64 (1990).

23        The second exception exists when a new rule "requires the observance of those

24    procedures that are implicit in the concept of ordered liberty." *Id.* (internal citations omitted).

25    This exception applies to "watershed" rules of criminal procedure implicating the

26    fundamental fairness and accuracy of trial. *O'Dell v. Netherland*, 521 U.S.151, 156, 117 S.Ct.

27    1969, 1973 (1997); *Graham v. Collins*, 506 U.S. 461, 113 S.Ct.892 (1993); *Teague*, 489 U.S.

28    at 311.  "A rule that qualifies under this exception must not only improve accuracy, but also

1   alter our understanding of the *bedrock procedural elements* essential to the fairness of the

2   proceeding." *Sawyer v. Smith*, 497 U.S. 227, 241, 110 S.Ct. 2822, 2831(1990) *quoting*

3   *Teague*, 489 U.S. at 311 (internal citations omitted)(emphasis original).  This two part test

4   must be met before a rule may overcome the *Teague* bar.  Furthermore, the Court has

5   cautioned that this exception is meant to apply only to a small core of rules. *Graham,* 506

6   U.S. at 478.  Those rules of procedure "implicit in the concept of ordered liberty." *Id. quoting*

7   *Teague*, 489 at 311.  In *Teague* the Court specifically cautioned that it is unlikely that such

8   rules applying to the basic tenets of due process have not yet emerged "[b]ecause we operate

9   from the premise that such procedures would be so central to an accurate determination of

10  innocence and guilt..." *Teague*, 489 U.S. at 313; *Graham*, 506 U.S. at 478.

11          Petitioner's proposed rule is not that of a "watershed" nature as the Court envisioned.

12  *See O'Dell*, 521 U.S. at 167 (sweeping rules like that of *Gideon* are of the character

13  envisioned by *Teague*).  To be of such a nature the rule must be more than abstractly

14  fundamental, it must be one "without which the likelihood of an accurate conviction is

15  seriously diminished." *Schriro v. Summerlin*, 542, U.S. 348, 352, 124 S.Ct. 2519, 2523

16  (2004)(holding that the new rule in *Ring v. Arizona*, 536 U.S. 583(2002) was not of a

17  watershed nature so as to be retroactive under *Teague* analysis).  The scope of the second

18  *Teague* exception is so limited that the Court has yet to find a rule that falls under this

19  exception. *Beard v. Banks*, 542 U.S. 406, 417, 124 S.Ct. 2504, 2513-14 (2004).

20          Petitioner has not established how this proposed rule would improve the accuracy of

21  convictions at trial.  Established law already requires the government to produce  relevant

22  exculpatory evidence. *Brady,* 373 U.S. 83.  Criminal defendants retain their right to confront

23  a witness through cross-examination.  A criminal defendant may motion for mistrial after a

24  witness's testimony, as trial counsel did in this case. (*See* Notice, Exhibit I, pg. 77-87).  Given

25  these existing safeguards it is clear that the proposed rule is not of the primacy and centrality

26  that would characterize a watershed rule of procedure. As such, Petitioner's proposed rule is

27  *Teague* barred.

28  . . . . . . . . .

1    *Ground Two: State's Use of the Arizona Victims' Bill of Rights to Impede Disclosure*

2         Petitioner contends that the state used the Victim's Bill of Rights to impede disclosure

3    and pretrial confrontation of Cheryl Martin in violation of his Fifth and Fourteenth

4    Amendment rights.  Respondents contend that there is no federal constitutional right to

5    discovery in a criminal case.  The state appellate court held that the state was under no

6    obligation to disclose the testimony of Martin. *Haley*, 978 P.2d 101.  Petitioner contends that

7    designation of Martin as the victim representative was in error as A.R.S. § 13-4403(A)

8    provides that the representative should not be a bona fide witness[15].  The question this Court

9    must decide is whether the state courts' decisions are contrary to established federal law.

10        Federal law also does not impose an obligation on the state or government to disclose

11   this type of testimony.  The Confrontation and Due Process Clauses do not normally afford

12   a criminal defendant the right to pretrial discovery. *Pennsylvania v. Ritchie*, 480 U.S. 39, 107

13   S.Ct. 989(1987)(plurality opinion).  A defendant's right to confront a witness testifying

14   against him is satisfied by his right to cross-examination of the witness. *Id.*; *See S.A. v.*

15   *Superior Court in and for the County of Maricopa*, 831 P.2d 1297 (1992) (applying *Ritchie*

16   to Arizona's Victim's Bill of Rights).  A criminal defendant does not have a right to the

17   statements of government witnesses prior to trial. *Degen*, 517 U.S. at 825.  Absent a federal

18   right to pretrial discovery by a criminal defendant this Court finds that the state court

19   decision is not contrary to established federal law.  Because the central crux of this claim is

20   the right to pretrial discovery of the testimony of government witnesses, the *Teague* analysis

21   of Ground One applies to this ground as well.

22   . . . . . . . . .

23

24        [15]The Arizona Court of Appeals declined to decide whether Martin was a victim under
     the Victims' Bill of Rights. (Petition, Exhibit 2, ¶7).  However, trial counsel testified at the
25   evidentiary hearing regarding Petitioner's post conviction proceedings, that he believed
     Martin would have qualified as a victim under the Victims' Bill of Rights because she was
26   the child of deceased victim. (Notice, Exhibit M. pg. 32-33; Reply, Exhibit D, pg. 32-33).
27   A.R.S § 13-4401(19) defines victim as "a person against whom a criminal offense has been
     committed, or if the person is killed...the person's spouse, parent, *child*..." (emphasis added).
28

- 15 -

1    *Ground Three: Jury Instruction on Premeditation*

2        In Ground Three, Petitioner asserts that he was denied due process as guaranteed by

3    the Fifth and Fourteenth Amendments because the premeditation jury instruction failed to

4    distinguish between first and second degree murder.  Respondents argue that Petitioner has

5    failed to exhaust this claim because it was presented on direct appeal solely as an issue of

6    state law and as such has failed to fairly present his federal claim to the state court. (Answer,

7    pg. 5-6).  Respondents also contend that this third ground is procedurally barred because the

8    appellate court held that Petitioner had requested the erroneous instruction and that any

9    resulting error was thus invited and the right to challenge it was waived[16]. (*Id.* at 6 *citing*

10   *State v. Logan*, 200 Ariz. 564, 30 P.3d 631).

11       Under 28 U.S.C. § 2254(b)(1), habeas relief shall not be granted unless the claim was

12   exhausted in state court, there is an absence of available state corrective process to exhaust

13   the claim, or circumstances exist which render the state process ineffective to protect the

14   petitioner's rights.  A federal court will not review a claim where a petitioner procedurally

15   defaulted a claim in state court, unless the petitioner can demonstrate cause and prejudice for

16   not presenting the constitutional claim or makes a colorable showing of actual innocence.

17   *Gray v. Netherland,* 518 U.S. 152, 162 (1996).

18       In the present case, Petitioner failed to phrase his claim regarding the premeditation

19   jury instruction as a federal constitutional claim on his direct appeal in state court.  Petitioner

20   does not demonstrate or allege any prejudice nor present any cause for failing to present his

21   claim in state court.  Nor does Petitioner assert a claim of actual innocence.  As such, his

22   claim is barred.

23       Furthermore, the state appellate court's review of Petitioner's claim regarding the jury

24   instruction on premeditation found that Petitioner had requested the language and had thus

25   invited the error. *Haley*, 978 P.2d at 102.  Invited error may not be challenged on appeal. *Id.*

26

27       [16]Respondents support their position citing *Joseph v. Angelone*, 184 F.3d 320, 330 (4th

28   Cir.1999); *Parker v. Champrion*, 148 F.3d 1219, 1222 (10th Cir.1998).

1    *citing State v. Diaz*, 168 Ariz. 363, 813 P.2d 728 (1991); *State v. Moreno*, 173 Ariz. 471, 844

2    P.2d 638 (App.1992).  When a state reviewing court's decision rests upon the invited error

3    doctrine, consideration of the issue is barred on habeas review.  *Leavitt v. Arave*, 383 F.3d

4    809, 832 (9th Cir.2004).  Thus, review of this claim is barred.

5    *Ground Four: Ineffective Assistance of Counsel*

6        In Ground Four, Petitioner asserts that he received ineffective assistance of counsel

7    in violation of Sixth and Fourteenth Amendment rights.  Petitioner asserts that his trial

8    counsel was ineffective when he (1) failed to interview Cheryl Martin prior to trial, (2)failed

9    to supply the State's expert, Dr. LaWall, with Petitioner's medical records prior to trial, and

10    (3) failed to file a motion to suppress the results of the blood test.

11        Petitioner presented his three ineffective assistance of counsel claims in his Rule 32

12    proceeding (Answer, Exhibit M; Reply, Exhibit 2) and to the Arizona Court of Appeals

13    following those proceedings (Petition, Exhibit 2).  Petitioner is entitled to relief if the state

14    court's decision rejecting his ineffective assistance of counsel claim was either "contrary to,

15    or involved an unreasonable application of," established law. *Williams v. Taylor*, 529 U.S.

16    362, 391 (2000).  The established law governing the merits of ineffective assistance of

17    counsel claims is expressed in *Strickland v. Washington*, 466 U.S. 668 (1984).  The general

18    standard for attorney performance is that of "reasonably effective assistance." *Id.*  The

19    *Strickland* test requires a petitioner to establish both deficient performance by counsel and

20    prejudice resulting from that performance to obtain relief. *See Luna v. Cambra*, 306 F.3d

21    954, 961 (9th Cir. 2002), *amended*, 311 F.3d 928.

22        The trial court denied Petitioner's Rule 32 petition by minute entry dated October 11,

23    2000.  In denying the petition the court found that

24        "1.  Counsel was not ineffective for failing to provide Dr. LaWall with all of the
medical records and the Court finds that no prejudice was suffered by the petitioner.
25        2.  The Court further finds that trial counsel was not ineffective for failure to
interview Cheryl Martin prior to trial, and that counsel did request an interview with
26        the victims (Martin) and this Court finds that Martin was a victim in the case.
3.  The Court further finds that trial counsel was not ineffective for failure to move
27        to suppress the results of the blood test for the reason that the blood test is authorized
under the Rules..."

28

1   (Answer, Exhibit M).  The Arizona Court of Appeals concluded that trial counsel's failure

2   to provide Dr. LaWall with medical records was not conduct that fell below the prevailing

3   professional norms nor did it prejudiced Petitioner. (Petition, Exhibit 2[17]).  The court also

4   found that Petitioner did not suffer prejudice based on counsel's failure to interview Cheryl

5   Martin prior to trial. (*Id.*).  And finally, the court concluded that based on the October 21,

6   1994, order and the October 24, 1994, search warrant, trial counsel would have had no basis

7   for moving to suppress the blood evidence. (*Id.*).

8          There is nothing in the record to suggest that the trial court or the appellate court

9   applied an inappropriate legal standard in their review of Petitioner's ineffective assistance

10  of counsel claims. *See Clark*, 331 F.3d 1062; *See Lynn*, 347 F.3d 735.  Both  applied the test

11  established in *Strickland*.  Thus the question is whether the state court unreasonably applied

12  the legal principle to the facts of this case. *Lynn*, 347 F.3d at 738 (quoting *Clark*, 331 F.3d

13  at 1067).  In looking at the state court's application of the law to the facts, a federal court may

14  not second-guess the fact finding process unless the state court was not merely wrong but

15  actually unreasonable. *Taylor*, 366 F.3d at 999.

16  **Failure to interview Martin prior to trial**

17         In denying Petitioner's claim that his counsel was ineffective in failing to interview

18  Cheryl Martin, the trial court found that Petitioner's trial counsel did in fact request an

19  interview with Martin. (Answer, Exhibit M).  The trial court also found that Martin was a

20  victim in the case. (*Id.*)  In affirming the trial court's decision, the appellate court noted that

21  there was little that trial counsel could have done to suppress Martin's statement even had he

22  known about it prior to trial. (Petition, Exhibit 2, ¶ 7).  The appellate court also noted that

23  efforts to suppress the statement would more than likely have been futile. (*Id.*)  Thus, both

24  courts found that Petitioner had failed to establish prejudice.

25  . . . . . . . . .

26

27         [17]Memorandum decision issued by Division Two of the Arizona Court of Appeals

28  2CA-CR01-0140-PR (October 23, 2001).

1    The trial court held an evidentiary hearing regarding Petitioner's post conviction relief

2    proceedings on October 11, 2000. (Reply, Exhibit D; Notice, Exhibit M).  At that hearing

3    Petitioner's trial counsel testified that he had requested an interview with Martin but had been

4    informed by the prosecution that Martin was unavailable because she had invoked her rights

5    as a victim. (*Id.* at 14, 33).  Counsel further testified that he believed that Martin did satisfy

6    the definition of victim in the Victim's Bill of Rights and he believed that any motion to

7    interview her would have been denied. (*Id.* at 32-33).  Finally counsel testified that while

8    Martin's testimony was damaging to the case all he could have done had he known about it

9    prior to trial was make a motion to suppress the statement. (*Id.* at 19).  Furthermore, counsel

10   motioned for a mistrial after Martin's testimony. (Notice, Exhibit I, p. 74-87).  There are no

11   facts to suggest that the trial court or appellate court were unreasonable in finding that trial

12   counsel's representation did not fall below an objective standard of reasonableness. Thus, this

13   Court may not second-guess the facts as found by the state courts but must apply the normal

14   standards of appellate review and determine whether or not the finding could reasonably be

15   supported by the record. *Taylor,* 366 F.3d at 999; *Lambert*, 393 F.3d at 978.  This Court finds

16   that the state courts' findings are reasonably supported by the record and that the appropriate

17   legal standard was applied to the facts with respect to trial counsel's failure to interview

18   Martin prior to trial.

19   **Failure to supply medical records to state's expert**

20   In denying Petitioner's claim that his trial counsel was ineffective in failing to supply

21   Dr. LaWall, the state's expert witness, with all of Petitioner's medical records, the trial court

22   found that Petitioner had failed to show that he suffered any prejudice. (Answer, Exhibit M).

23   In upholding the trial court's decision, the state appellate court found that Petitioner failed

24   to show that "but for any assumed deficiency in counsel's performance, the outcome of the

25   case would have been different." (Petition, Exhibit 2, ¶ 5).  The appellate court also found

26   that counsel performed within the prevailing norms. (*Id.*).

27   At the post conviction relief evidentiary hearing, counsel testified that while he did

28   not personally provide a copy of the records to Dr. LaWall, he disclosed all medical records

1   involving Petitioner's case to the state on December 12, 1996. (Reply, Exhibit D, p.9-10;

2   Notice, Exhibit E, p.9-10).  Counsel also testified that he did not believe that the records

3   provided were the basis for the doctor's change in opinion but rather that the change in

4   opinion was based on the state providing him with information about its theory of the case.

5   (*Id.* at 12).  Counsel further testified that he was prepared for Dr. LaWall when he changed

6   his testimony and he did impeach Dr. LaWall regarding the change in opinion. (*Id.* at 18;

7   Notice, Exhibit I, p. 151-222 (Cross-Examination of Dr. LaWall by trial counsel)).

8       Dr. LaWall was not the only expert to testify about Petitioner's mental state at trial.

9   Trial counsel presented the testimony of Dr. Esplin to support the insanity defense. (Notice,

10  Exhibit H).  Dr. Esplin testified that in his opinion Petitioner suffered from a serious thought

11  disorder independent of drug use. (*Id.*, p. 40, 54).  He also testified that it was his opinion that

12  Petitioner was not capable at the time of this incident of "rational thoughts, of understanding

13  or appreciating the quality of his acts." (*Id.* at 62).  Both Dr. Esplin and Dr. LaWall noted the

14  similarity between their reports. (*Id.* at 62, 161).

15      Based on these facts, this Court cannot say that the state courts were unreasonable in

16  determining that trial counsel performed within the prevailing norms.  Nor can this Court say

17  that it was an unreasonable for the state courts to determine that no prejudice had been shown

18  by Petitioner.  As the appellate court noted, "[w]hether the materials were provided before

19  trial or not, Dr. LaWall would ultimately have had the information and would have changed

20  his initial opinion." (Petition, Exhibit 2, ¶ 5).

21  **Failure to suppress blood evidence**

22      Petitioner alleges that trial counsel was ineffective when he failed to file a motion to

23  suppress the results of the blood test performed on October 28, 1994 of the blood taken on

24  October 21, 1994.  The trial court found that trial counsel's performance was not ineffective.

25  The appellate court in upholding the trial court's decision found that "it is clear that trial

26  counsel had no basis for moving to suppress the blood results." (*Id.* at ¶ 10).

27      On October 21, 1994, the day of the incident, Detective Keith Cisewski submitted an

28  affidavit in support of an order for a blood sample. (Reply, Exhibit A).  That same day a

1    Justice of the Peace issued an order authorizing the taking of a blood sample from Petitioner.

2    On October 28, 1994, Detective Ed Schweitzer submitted an affidavit for a search warrant

3    to perform relevant tests on the blood sample taken on October 21, 1994, to determine

4    whether Petitioner was on any type of prescription drug or illegal narcotic at the time of the

5    incident. (*Id.*, Exhibit B).  The search warrant was issued by a Pinal County Superior Court

6    Judge on October 28, 1994. (*Id.*)

7         When an ineffective assistance of counsel claim is rooted in failure to litigate a Fourth

8    Amendment issue, a petitioner must show (1) the overlooked motion to suppress would have

9    been meritorious and (2) a reasonable probability exists that the jury would have reached a

10    different verdict. *Ortiz-Sandoval v. Clark*, 323 F.3d 1165, 1170 (9th Cir.2003)(*citing

11    Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).  Thus Petitioner would need to show

12    that a motion by his trial counsel would have been meritorious.  As noted above, the state

13    appellate court concluded that such a motion would have been denied.  Furthermore, no facts

14    exist to suggest that the requisite probable cause did not exist as foundation for the order to

15    draw the blood and the warrant to test the blood. *See State v. Jones*, 203 Ariz. 1, 49 P.3d 273

16    (Ariz. 2002); A.R.S. § 13-3905.  Based on the fact that the blood was initially drawn

17    pursuant to a valid court order and was then tested pursuant to a valid search warrant, this

18    Court finds that the state courts were not unreasonable in their findings.

19    . . . . . . . . .

20    . . . . . . . . .

21    . . . . . . . . .

22    . . . . . . . . .

23    . . . . . . . . .

24    . . . . . . . . .

25    . . . . . . . . .

26    . . . . . . . . .

27    . . . . . . . . .

28    . . . . . . . . .

1   CONCLUSION

2        For the foregoing reasons, the Magistrate Judge recommends that the District Judge,

3   after independent review of the record, deny Petitioner's Petition for Writ of Habeas Corpus

4   (Docket # 1).

5        Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within

6   ten days after being served with a copy of this Report and Recommendation. If objections

7   are filed, the parties should use the following case number: CV 02-1087-PHX-DGC.

8        If objections are not timely filed, then the parties' right to *de novo* review by the

9   District Court may be waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th

10  Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

11       DATED this 6th day of March, 2006.

12

13  _____

14  **CHARLES R. PYLE**
    **UNITED STATES MAGISTRATE JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28